OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
Michael S. Fox
Ellen V. Holloman
*Attorneys for Plaintiff*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>TASKER PRODUCTS CORP.,<br><br>                            Debtor. | Chapter 7<br>Case No. 09-13455 (AJG) |
| ALAN NISSELSON, as Chapter 7 Trustee of Tasker Products Corp.,<br><br>                            Plaintiff,<br><br>v.<br><br>LANNY DACUS, GREG OSBORN, STATHIS KOUNINIS, DOREEN REMMEN, JOSEPH P. CARFORA, TIMOTHY M. LANE, FREDERICK G. LEDLOW, WILLIAM P. MILLER, and PETER O'GORMAN,<br><br>                            Defendants. | Adv. Pro. No. 09-_____ AJG)<br><br>**<u>COMPLAINT</u>** |

      Plaintiff Alan Nisselson, as the Chapter 7 Trustee of Tasker Products Corp., by and through his special litigation counsel, for his Complaint on behalf of Tasker Products Corp. against defendants Lanny Dacus, Greg Osborn, Stathis Kouninis, Doreen Remmen, Joseph P.

Carfora, Timothy M. Lane, Frederick G. Ledlow, William P. Miller, and Peter O'Gorman, alleges as follows:

Nature of the Action

1. Plaintiff seeks to recover damages from the defendants, who are former officers and directors of Tasker Products Corp. ("Tasker"), for their breaches of fiduciary duties and for their mismanagement and waste of Tasker's assets at a time when Tasker was either insolvent or in the zone of insolvency, all of which harmed Tasker, deepened and exacerbated Tasker's insolvency, and caused damages and losses to Tasker. The relief Plaintiff seeks includes damages in an amount to be determined at trial, in addition to all costs of this litigation, including, but not limited to, attorneys' fees.

The Parties and Related Entities

2. Tasker Products Corp. was a corporation organized under the laws of the state of Delaware. Tasker had principal executive offices at 21-00 Route 208, Fairlawn, New Jersey 07410, and a manufacturing facility at 13235 Highway 105, Conroe, Texas, 77304.

3. Upon information and belief, the Board of Directors of Tasker, including Defendants, caused Tasker to execute a *Deed of Assignment for the Benefit of Creditors* on or about October 24, 2008 (referred to herein as the "Deed of Assignment"), pursuant to resolutions adopted by the Board on or about October 16, 2008 and October 22, 2008.

4. Upon information and belief, on or about October 24, 2008, Charles M. Forman (referred to herein as "Forman" or the "Assignee"), of the law firm Forman Holt Eliades & Ravin, LLC, at 80 Route 4 East, Paramus New Jersey 07652 (referred to herein as "Forman Holt"), was selected to act as assignee in a proceeding to be commenced in the Superior Court of New Jersey, Bergen County, Chancery Division under the caption *In the Matter of the General*

*Assignment for the Benefit of Creditors, Tasker Products Corp. f/k/a Tasker Capital Corp, Assignor to Charles M. Forman, Esq., Assignee*.

5.Upon information and belief, on or about October 24, 2008 and pursuant to the terms of the Deed of Assignment, the Board of Directors of Tasker, including Defendants, caused Tasker to voluntarily assign, transfer and convey all of its assets in trust to Forman as assignee.

6.Upon information and belief, Forman, as assignee, was empowered to liquidate Tasker's assets and distribute the proceeds to Tasker's creditors.

7.Upon information and belief, Forman failed, for over six months, to develop or implement an appropriate plan of sale with respect to Tasker's assets.

8.On May 28, 2009, an involuntary petition for relief[1] under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1130, *et seq.*, as amended (the "Bankruptcy Code") was filed against Tasker in the United States Bankruptcy Court for the Southern District of New York, under the caption *In re Tasker Products Corp.*, Case No. 09-13455 (AJG).

9.Upon information and belief, the Assignee neither consented to an Order for Relief nor filed an answer or motion pursuant to either the Federal Rules of Bankruptcy Procedure or the Federal Rules of Civil Procedure.

10.Plaintiff Alan Nisselson (referred to herein as "Plaintiff" or the "Trustee") is a partner in the law firm of Windels Marx Lane & Mittendorf, LLP, located at 156 West 56th Street, New York, New York, 10019.  By *Notice to Trustee of Appointment and Fixing Amount of Bond*, dated July 21, 2009, Plaintiff was appointed as the Trustee of Tasker.

---

[1] That petition was subsequently amended on May 28, 2009.  The amended petition was granted by an Order for Relief entered July 15, 2009.

11. On October 21, 2009, the Trustee sought an order authorizing the retention of special litigation counsel to investigate and prosecute claims available to the estate of Tasker. That order was granted and entered on November 3, 2009.

12. Defendant Lanny Dacus (referred to herein as "Dacus"), upon information and belief, is a United States citizen residing in Ridgewood, New Jersey. Dacus was the President, Chief Executive Officer and a director of Tasker from December 2006 until October 2008.

13. Defendant Gregory Osborn (referred to herein as "Osborn"), upon information and belief, is a United States citizen residing in Ridgewood, New Jersey. Osborn was the Executive Chairman and a director of Tasker from March 2007 until October 2008.

14. Defendant Stathis Kouninis (referred to herein as "Kouninis"), upon information and belief, is a United States citizen residing in New Hampshire. Kouninis was the Chief Financial Officer, Treasurer, Secretary and a director of Tasker from February 2006 until April 2008.

15. Defendant Doreen Remmen (referred to herein as "Remmen"), upon information and belief, is a United States citizen residing in Ridgewood, New Jersey. Remmen was the Chief Financial Officer and a director of Tasker from April 2008 until October 2008.

16. Defendant Joseph P. Carfora (referred to herein as "Carfora"), upon information and belief, is a United States citizen residing in Ridgewood, New Jersey. Upon information and belief, Carfora was a director of Tasker from February 2007 until October 2008. Upon information and belief, Carfora served on the Corporate Governance Committee of Tasker's Board of Directors.

17. Defendant Timothy M. Lane (referred to herein as "Lane"), upon information and belief, is a United States citizen residing in Naples, Florida. Lane was a director of Tasker from

870972-2

June 2007 until October 2008. Upon information and belief, Lane served on the Audit Committee and Corporate Governance Committees of Tasker's Board of Directors.

18. Defendant Frederick G. Ledlow (referred to herein as "Ledlow"), upon information and belief, is a United States citizen residing in Upper Saddle River, New Jersey. Ledlow was a director of Tasker from December 2006 until October 2008. Upon information and belief, Ledlow served on the Compensation Committee and as the Chair of the Corporate Governance Committee of Tasker's Board of Directors.

19. Defendant William P. Miller (referred to herein as "Miller"), upon information and belief, is a United States citizen residing in Alpine, New Jersey. Upon information and belief, Miller was a director of Tasker from May 2006 until October 2008. Upon information and belief, Miller served on the Compensation Committee and as the Chair of the Audit Committee of Tasker's Board of Directors.

20. Defendant Peter O'Gorman (referred to herein as "O'Gorman"), upon information and belief, is a United States citizen residing in Upper Saddle River, New Jersey. Upon information and belief, O'Gorman was a director of Tasker from January 2007 until October 2008. Upon information and belief, Gorman served on the Audit Committee and as the Chair of the Compensation Committee of Tasker's Board of Directors.

21. Defendants Dacus, Osbourn, Kouninis, Remmen, Carfora, Lane, Ledlow, Miller and O'Gorman are collectively referred to herein as the "Tasker Defendants."

Jurisdiction and Venue

22. This adversary proceeding arises under the Bankruptcy Code, and arises in and relates to Tasker's Chapter 7 case in this court.

23. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334.

870972-2

24. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2).

25. Venue properly lies in this jurisdiction, pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

26. Tasker was a specialty chemical company that, together with its subsidiaries, manufactured, distributed and marketed antibacterial products and applications for use in the agricultural, seafood and food processing industries. According to Tasker's website, Tasker's flagship products included Unifresh® FootBath Concentrate V2, an antibacterial solution that helps control hoof warts and other bacterial conditions in dairy cows, Pacific Blue™ Seafood Spray, a spray that extends the shelf life and controls the odor of seafood, and Tasker Blue™, an antibacterial scalder treatment for the poultry processing industry.

27. Tasker was a publicly traded company, with its shares traded under the symbol TKER on the OTC Bulletin Board.

28. Upon information and belief, Tasker incurred millions of dollars of losses in its operations in each financial quarter since at least 2002.

29. Upon information and belief, Tasker experienced net losses for the years ended December 31, 2007, 2006 and 2005 of $41,394,000, $62,943,000 and $18,269,000, respectively, and was in the zone of insolvency throughout 2007 and 2008.

30. The Tasker Defendants failed to establish and implement a long-term capital plan for Tasker. As a result of that failure, Tasker experienced constant erosion of shareholder value, and was unable to maintain the value of its acquisitions or capitalize on the value of trademarked and patented products and processes.

31. The Tasker Defendants also failed to develop and implement a reasonable strategic plan or product strategy for Tasker. As a result, any and all capital raised by Tasker, whether through private placements or other means, would only be used to service Tasker's debt

6
870972-2

and cover accrued and ongoing operating expenses, and would not result in increasing operating performance that would produce positive cash flow to justify further capital raising efforts.

32. Rather than develop and implement a strategic plan for Tasker, the Tasker Defendants employed a short-term capital strategy to solve cash flow problems by continually obtaining operating capital through private placements.

33. Upon information and belief, under the direction of the Tasker Defendants, Tasker entered into a series of private placement transactions on or about September 28, 2007, November 29, 2007 and December 14, 2007 (the "2007 Notes"), through which Tasker issued 6% Secured Convertible Promissory Notes and warrants to investors for approximately $12,700,000. In related transactions on or about December 20, 2007, and December 31, 2007, Tasker issued additional 6% Secured Convertible Promissory Notes and warrants to investors in approximate amounts of $2,100,000 and $35,000, respectively.

34. Despite the millions of dollars that Tasker raised through the 2007 Notes, Tasker remained on the verge of insolvency. Upon information and belief, Tasker had only $119,000 of cash and cash equivalents remaining by June 30, 2008.

35. Upon information and belief, on or about August 28, 2008, under the leadership and direction of the Tasker Defendants, Tasker issued additional promissory notes and warrants to investors in an approximate amount of $2,500,000 (the "Bridge Notes").

36. The offering documents for the Bridge Notes stated that Tasker was contemplating an additional offering of up to $8,000,000 of additional secured convertible promissory notes and warrants (the "Qualified Offering"), and would provide a mechanism through which Bridge Notes investors could exchange their notes, at favorable terms, for notes to be issued in the Qualified Offering.

7
870972-2

37.     Upon information and belief, the Tasker Defendants never intended to pursue the Qualified Offering.

38.     Upon information and belief, despite Tasker's deepening insolvency and precarious financial health, the Tasker Defendants diverted at least $800,000 of funds raised from investors through the Bridge Notes from operating expenses to the first priority repayment of loans made to Tasker by "certain officers, directors (including past family members), former directors and individuals," including defendants Dacus and Osborn, and Melanie Dacus.  This decision ensured that Tasker had almost no operating capital in the Fall of 2008.

39.     Upon information and belief, on or about October 10, 2008, certain of Tasker's senior creditors, who had invested in Tasker through the 2007 Notes and the Bridge Notes, became aware that the Tasker Defendants had abandoned plans for the Qualified Offering and were considering the termination of Tasker's operations.

40.     Upon information and belief, on or about October 12, 2008 and October 14, 2008, defendants Dacus and Osborn received proposals that set forth business plans for the growth and expansion of Tasker's Dairy Products and Poultry Products Divisions.  These plans underscored the viability of Tasker's businesses, with leaner staffing and more efficient organization.

41.     Upon information and belief, the Tasker Defendants, led by defendants Dacus and Osborn, failed to consider those proposals.

42.     Upon information and belief, on or about October 16, 2008, certain of Tasker's senior creditors provided a proposal to Tasker setting forth a plan for Tasker's reorganization under Chapter 11 of the Bankruptcy Code.  That proposal was intended to maximize Tasker's long-term wealth-creating capacity through restructuring.

43. Upon information and belief, as a pre-requisite to even considering that proposal, the Tasker Defendants, led by defendants Dacus and Osborn, demanded that the senior creditors pay the fees of Tasker's attorneys who would be engaged to review the proposal. Moreover, the Tasker Defendants, led by Dacus and Osborn, required as a prerequisite to considering the proposal the indemnification by the senior creditors of the Tasker Board of Directors against any and all liability. The Tasker Defendants ultimately refused to consider the senior creditors' proposal.

44. Upon information and belief, also on or about October 16, 2008, certain of Tasker's senior creditors became aware that the Tasker Defendants were planning to execute the Deed of Assignment, which would result in the transfer all of Tasker's assets to an assignee, rather than pursue reorganization of Tasker's business or liquidation of Tasker's assets under the Bankruptcy Code.

45. Upon information and belief, the Deed of Assignment set forth no plan, proposal or solution to maximize Tasker's assets, in contrast to the alternative plans submitted by Tasker's employees and creditors.

46. Upon information and belief, at a Tasker Board meeting on or about October 16, 2008, the Tasker Defendants requested "rescue funding" from Tasker's senior creditors in the amount of at least $590,000, as an alternative to an assignment.

47. Upon information and belief, on or about October 19, 2008, the Tasker Defendants, including defendants Dacus and Osborn, were provided with additional proposals setting forth a restructuring of Tasker so that it could remain an on-going concern, or, alternatively, an orderly liquidation of Tasker's assets pursuant to the Bankruptcy Code.

48. Upon information and belief, on or about October 22, 2008, the Tasker Defendants, led by defendants Dacus and Osbourn, voted to terminate Tasker's operations, fire its employees, disband the Board, and convey Tasker's assets, in trust, to an assignee for liquidation.

49. Upon information and belief, on October 24, 2008, the Tasker Defendants, including defendants Dacus and Osborn, executed the Deed of Assignment, naming Forman as assignee, and assigned, transferred and conveyed all of Tasker's assets in trust to the Assignee.

50. When the Tasker Defendants executed the Deed of Assignment, they knew that Tasker had been either insolvent or in the zone of insolvency since at least 2007.

51. When the Tasker Defendants executed the Deed of Assignment, they knew that Tasker had no financing, no employees, no operating cash and no on-going operations.

52. When the Tasker Defendants executed the Deed of Assignment, they knew that the Assignee would not and could not continue Tasker's business without financing.

53. When the Tasker Defendants executed the Deed of Assignment, they knew that there was no sound basis for the assignment.

54. Upon information and belief, prior to executing the Deed of Assignment, the Tasker Defendants, including defendants Dacus and Osborn, were advised by that a Chapter 7 or a Chapter 11 proceeding under the Bankruptcy Code would have been more effective than an assignment to maintain and preserve Tasker's assets, or reorganizing Tasker as a viable business.

55. The Tasker Defendants wrongly refused to consider Chapter 7 or Chapter 11 proceedings for Tasker, which would have been in best interests of Tasker, choosing instead to assign of all of Tasker's assets in trust to the Assignee.

56. The Assignee ultimately did not liquidate Tasker's assets.

57. Upon information and belief, on April 29, 2009, certain senior creditors of Tasker provided to the Assignee written notice of claims against the current and former officers and directors of Tasker, including the Tasker Defendants. The Assignee failed to respond to the written notice. Certain of Tasker's senior creditors then filed a petition for involuntary bankruptcy in the Southern District of New York on May 28, 2009. The Assignee failed to answer, move against, or otherwise respond to the petition.

COUNT I

BREACHES OF FIDUCIARY DUTY AGAINST THE TASKER DEFENDANTS

58. Plaintiff repeats and realleges its allegations set forth in paragraphs 1 through 57.

59. As executive officers and/or directors of Tasker, the Tasker Defendants owed to Tasker fiduciary duties, including duties to:

(a) obtain material information necessary to make informed business decisions;

(b) make informed, sensible independent business decisions and properly oversee, manage and operate Tasker's day-to-day business operations;

(c) implement processes and controls to ensure that Tasker's employees and officers provided material information so that Tasker's directors had the ability to make informed business decisions;

(d) adequately monitor and oversee Tasker's operations, so that the Tasker Board of Directors could be informed of the business risks and other problems requiring its attention;

(e) obtain adequate professional advice in connection with Tasker's operations;

(f) create, implement and otherwise ensure that Tasker had a strategic plan, a long-term capital plan and adequate capital;

(g) obtain adequate professional advice in connection with business decisions when Tasker did not have a strategic plan, long-term capital plan, adequate capital or historically profitable performance;

(h) allow adequate time to consider and evaluate significant business decisions before making such decisions;

(i) disclose, in a timely manner accurate and complete material information regarding Tasker's operations so that the Tasker Board of Directors could properly exercise its business judgment and make informed decisions on behalf of Tasker;

(j) act in the best interests of Tasker;

(k) preserve Tasker's assets for the benefit of Tasker, and not deepen Tasker's insolvency to the detriment of Tasker; and

(l) not waste Tasker's assets.

60. The Tasker Defendants knowingly disregarded and willfully breached their fiduciary duties to Tasker by failing to: (a) obtain material information necessary to make informed business decisions and/or provide advice to Tasker's Board of Directors; (b) make informed, sensible business decisions and/or recommendations to Tasker's Board of Directors; (c) implement processes and controls to ensure that Tasker's employees and agents provided material information so that Tasker's Board of Directors had the ability to make informed business decisions; (d) adequately monitor and oversee Tasker's business and operations; (e) ensure that Tasker had a strategic plan, a long-term capital plan and adequate capital; (f) obtain adequate professional advice in connection with business decisions when Tasker did not have a strategic plan, long-term capital plan, adequate capital or historically profitable performance; (g) allow adequate time to consider and evaluate business decisions before making such decisions or

12

making recommendations to Tasker's Board of Directors; (h) preserve Tasker's assets for the benefit of Tasker, and not deepen the insolvency to the detriment of Tasker; and (h) avoid or prevent the waste of Tasker's assets.

61. The Tasker Defendants' conduct and actions, as alleged herein, violated their fiduciary duties to Tasker, and were not the product of good business judgment, because they were not undertaken or conducted: (1) in good faith; (2) in a manner the Tasker Defendants reasonably could have believed to be in the best interests of Tasker; and/or (3) with the care that an ordinarily prudent person in a like position would exercise under similar circumstances.

62. As a direct and proximate result of the breaches of fiduciary duty by the Tasker Defendants, Tasker's insolvency was deepened and exacerbated, and Tasker's assets were ultimately conveyed in trust to an Assignee.

63. As a direct and proximate result of the breaches of fiduciary duty by the Tasker Defendants, Tasker sustained substantial harm and was damaged thereby.

64. The Director Defendants are liable to Tasker as a result of the acts alleged herein, in an amount to be determined at trial.

## COUNT II

### GROSS MISMANAGEMENT AGAINST THE TASKER DEFENDANTS

65. Plaintiff repeats and realleges its allegations set forth in paragraphs 1 through 64.

66. The Tasker Defendants owed to Tasker the fiduciary duty to properly and prudently manage the assets and business of Tasker in a manner consistent with operations of a publicly-held corporation and so as not to waste or diminish the value of those assets and, once in the zone of insolvency, not to deepen Tasker's insolvency.

67. By their reckless and willful actions alleged herein, the Tasker Defendants abandoned and abdicated their responsibilities and fiduciary duties with regard to properly and prudently managing the assets and business of Tasker.

68. As a result of the Tasker Defendants' reckless and willful behavior, gross mismanagement and breaches of duty alleged herein, Tasker and Tasker's corporate assets have not been properly and prudently managed and have been wasted.

69. The actions and conduct of the Tasker Defendants have damaged Tasker, deepened and exacerbated Tasker's insolvency, and ultimately drove Tasker out of business.

70. The Tasker Defendants are liable to Tasker as a result of the acts alleged herein, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demand that judgment be entered as follows:

(a) Awarding Plaintiff damages caused by Defendants' conduct in an amount to be proven at trial;

(b) Awarding Plaintiff attorneys' fees and costs; and

(c) Awarding Plaintiff any additional relief that the Court deems just and proper.

Dated: New, York, New York
January 12, 2010

                                        OLSHAN GRUNDMAN FROME
                                        ROSENZWEIG & WOLOSKY LLP


                                        By:   /s/ Ellen V. Holloman
                                                Michael S. Fox
                                                Ellen V. Holloman
                                                *Attorneys for Plaintiff*
                                                Park Avenue Tower
                                                65 East 55th Street
                                                New York, New York 10022
                                                (212) 451-2300

870972-2